```
            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF KANSAS


SHEILA W. CRABTREE,

                    Plaintiff,

vs.                                      Case No. 14-2506-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                    Defendant.
```

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On May 29, 2013, administrative law judge (ALJ) Christine A. Cooke issued her decision (R. at 11-20). Plaintiff alleges that she had been disabled since June 4, 2009 (R. at 11). Plaintiff meets the insured status requirements for social security disability benefits through December 31, 2014 (R. at

13).  At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date (R. at 13).  At step two, the ALJ found that plaintiff had a severe combination of impairments (R. at 13).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 15).  After determining plaintiff's RFC (R. at 15-16), the ALJ found at step four that plaintiff could not perform past relevant work (R. at 18).  At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 19). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 20).

**III.  Did the ALJ err by failing to elicit a reasonable explanation from the vocational expert (VE) for discrepancies with the testimony of the VE and the Dictionary of Occupational Titles (DOT)?**

In his RFC findings, the ALJ found that plaintiff had a number of physical and mental limitations.  Among the limitations were: (1) claimant should never have the task of reading as a regular part of her job duties and should have no clerical duties; (2) mentally, claimant should never be expected to understand, remember, or carry out detailed instructions; her jobs duties must be simple, repetitive, and routine in nature; and (3) she should never engage in hard repetitive grasping,

5

such as would be required to use pliers or to open a sealed jar, with her bilateral hand (R. at 15-16).

At a hearing, the ALJ provided the VE with her RFC findings (R. at 39-40). The VE indicated that a person with such limitations could perform the light exertional level jobs of folding machine operator (DOT 208.685-014), a collator operator DOT 208.685-010), and an inserting machine operator (DOT 208.685-018) (R. at 40). The ALJ adopted this testimony, finding that plaintiff could perform these three occupations, that the testimony of the VE was consistent with the DOT, and that therefore plaintiff was not disabled (R. at 19-20).

All three jobs indicate that they are clerical and kindred occupations, 1991 WL 671753, 671754, 671755. The ALJ clearly indicated that plaintiff should have "no clerical duties" (R. at 16, 39). Before relying on VE testimony, the ALJ must identify and obtain a reasonable explanation for any conflicts between occupation evidence provided by the VE and information in the DOT and its companion publication, the Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles (SCO), and explain in the decision how any conflict that has been identified has been resolved. SSR 00-4p, 2000 WL 1898704 at *1; Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999)(we hold that the ALJ must investigate and elicit a reasonable explanation for any conflict between the DOT and expert

testimony before the AL may rely on the expert's testimony as substantial evidence to support a determination of nondisability).

The VE testified that his testimony was consistent with the DOT (R. at 41). The VE went on to testify that in respect to the limitation to clerical duties, the VE supplemented his testimony with his work experience, as that information "is absent from the DOT and the SCO" (R. at 41-42).

First, on its face, the limitation to no clerical duties is not consistent with the fact that all 3 occupations identified by the VE indicate that they are clerical occupations. Second, the VE clearly erred when he testified that the limitation from clerical duties is absent from the DOT. The 3 occupations are clearly and unambiguously identified in the DOT as clerical and kindred occupations.

In the case of Hackett v. Barnhart, 395 F.3d 1168, 1175 (10th Cir. 2005), the court cited to Haddock and SSR 00-4p, and found that there was no indication in the record that the VE expressly acknowledged a conflict with the DOT or that he offered an explanation for the conflict. An ALJ must inquire about and resolve any conflicts between the VE testimony and the description of that job in the DOT. Poppa v. Astrue, 569 F.3d 1167, 1173 (10th Cir. 2009).

Given the RFC finding that plaintiff should have no clerical duties, there is a clear conflict between the VE testimony that the plaintiff can perform the three jobs identified by the VE with the DOT designation of all 3 jobs as clerical occupations.  The VE not only failed to acknowledge a conflict with his testimony and the DOT, or provide an explanation for the conflict, the VE clearly erred when he testified that his testimony was consistent with the DOT.  The VE further erred when he mentioned the limitation to no clerical duties, and testified that that information is absent from the DOT; in fact, that information is clearly present in the DOT description of all 3 jobs.  The DOT clearly and unambiguously indicates that all 3 jobs are clerical occupations.  The ALJ failed to ask the VE to reconcile this conflict, and the ALJ therefore committed reversible error.  <u>Krueger v. Astrue</u>, 337 Fed. Appx. 758, 761-762 (10th Cir. July 17, 2009).

Second, the ALJ found that plaintiff should "**never be expected to understand, remember, or carry out detailed instructions**" and that "her job duties must be simple, repetitive, and routine in nature" (R. at 16, emphasis added, R. at 39).  All 3 jobs identified by the VE and adopted by the ALJ in her decision are jobs that require a reasoning level of 2, which requires the ability to "apply commonsense understanding to **carry out detailed but uninvolved written or oral**

**instructions**."  1991 WL 671753, 671754, 671755 (emphasis added). Here, a conflict exists between the RFC expressly excluding occupations that require understanding, remembering and carryout out detailed instructions, and the DOT indication that all 3 jobs require the ability to carry out detailed instructions.  As the court indicated in MacDonald v. Colvin, 2015 WL 4429206 at *8 (D. Kan. July 20, 2015), such a conflict must be explained.

Third, the ALJ, in her RFC finding, limited plaintiff to no hard repetitive grasping, such as would be required to use pliers or open a sealed jar, with her bilateral hand (R. at 15). However, in her hypothetical question to the VE, the ALJ stated only that plaintiff should never engage in hard, repetitive grasping with her right upper extremity (R. at 39).  On remand, this discrepancy should be resolved.  Plaintiff did note some medical records regarding impairments in her left upper extremity (R. at 554-55, 648).

Plaintiff also argued that the three jobs identified by the VE require frequent handling, which is correct according to the DOT.  Handling is defined in the SCO to include grasping (SCO at C-3).  However, also according to the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO) (U.S. Dept. of Labor, 1993 at C-3), "occasionally" involves an activity existing up to 1/3 of the time, "frequently" involves an activity existing from 1/3 to 2/3 of

9

the time, and "constantly" involves an activity or condition that exists 2/3 or more of the time. In the case of <u>Gallegos v. Barnhart</u>, 99 Fed. Appx. 222, 224 (10th Cir. June 2, 2004), a vocational expert (VE) expressly construed "repetitive" to mean the same thing as "constant," or 2/3 or more of the time. Thus, the ALJ's hypothetical of no repetitive grasping must be considered in light of the fact that repetitive use and frequent use are not synonymous.

**IV. Did the ALJ err in her evaluation of plaintiff's mental impairments?**

At steps two and three, the ALJ found that plaintiff had moderate difficulties in maintaining concentration, persistence and pace (R. at 15). This finding was consistent with the psychiatric review technique form (PRTF) completed by Dr. Scher (R. at 691). Plaintiff argues that the ALJ's RFC findings do not adequately account for this finding (Doc. 8 at 10).

According to SSR 96-8p:

> The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity

10

>              of mental impairment(s) at steps 2 and 3 of
>              the sequential evaluation process. The
>              mental RFC assessment used at steps 4 and 5
>              of the sequential evaluation process
>              requires a more detailed assessment by
>              itemizing various functions contained in the
>              broad categories found in paragraphs B and C
>              of the adult mental disorders listings in
>              12.00 of the Listing of Impairments, and
>              summarized on the PRTF.

1996 WL 374184 at *4.  Thus, the PRTF form is used to determine the severity of a mental impairment at steps 2 and 3 of the sequential evaluation process, while a mental RFC assessment form is used to determine a claimant's RFC at steps 4 and 5.

The ALJ made findings at step two in the four broad areas, which are only for the purpose of rating the severity of a mental impairment at steps 2 and 3 of the sequential evaluation process.  These findings are not an RFC assessment.  The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment.

As noted above, the ALJ made findings at step two and three in accordance with the opinions of Dr. Scher in the four broad areas.  The ALJ then made RFC findings in accordance with the RFC assessment by Dr. Scher (R. at 16, 695-697).  The ALJ did not err by relying on Dr. Scher's RFC assessment when making his own RFC findings.

Plaintiff also alleges that the ALJ failed to explain why he did not accord greater weight to the opinions of Dr.

Breckenridge, who prepared a psychological evaluation of the plaintiff on June 23, 2011 (R. at 677-681). Dr. Breckenridge opined the following regarding the plaintiff:

> …this client does appear to be capable of understanding and remembering simple instructions. Her ability to sustain concentration and persistence while working on simple tasks was only fair. This client's ability to interact socially seems to be quite limited by her panic attacks. Her ability to adapt to a work environment appears to be highly marginal at this time due to depression and panic attacks.

(R. at 681).

In her decision, the ALJ stated that she gave "great weight to this opinion (R. at 18). However, the ALJ also gave "great weight" to the state agency assessment by Dr. Scher (R. at 18), and the ALJ's mental RFC findings closely match the opinions rendered by Dr. Scher (R. at 16, 695-697). The opinion of Dr. Breckenridge that plaintiff's ability to adapt to a work environment appears to be highly marginal at this time is not directly reflected in the ALJ's RFC findings. The fact that the opinions of Dr. Breckenridge and Dr. Scher are not similar is reflected in the report of Dr. Scher when Dr. Scher comments on the report of Dr. Breckenridge and states that the evaluation by Dr. Breckenridge is only given "some" weight (R. at 693).

If the RFC assessment conflicts with a medical opinion, the ALJ must explain why the opinion was not adopted. SSR 96-8p,

12

1996 WL 374184 at *7. In light of the differences between the opinions of Dr. Scher and Dr. Breckenridge, which is acknowledged by the fact that Dr. Sher only accorded some weight to the opinions of Dr. Breckenridge, and in light of the fact that this case is being remanded for other reasons, as set forth above, on remand, the ALJ should clarify why greater weight is given to one medical opinion over another one.

**V. Did the ALJ err in his reliance on the opinions of Dr. Zuckerman?**

In her decision, the ALJ gave "great" weight to the opinions of Dr. Zuckerman (R. at 14, 18), a medical expert in ophthalmology, who testified at the hearing (R. at 32-37). Plaintiff argues that the ALJ's RFC did not account for the loss of vision in the right eye (Doc. 8 at 13). However, Dr. Zuckerman did review the documents cited to by plaintiff (R. at 33, 840-843). In the absence of any medical testimony disputing the opinions of Dr. Zuckerman, the court finds no clear error by the ALJ in the weight accorded to the opinions of Dr. Zuckerman.[1]

**VI. Did the ALJ err in his analysis of plaintiff's credibility?**

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will

---

[1] The court also finds no error by the ALJ because the ALJ stated that "There are no opinions by claimant's treating source" (R. at 18). It is a factual statement, the accuracy of which is not disputed by plaintiff.

not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence.  See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).

Plaintiff argues that the ALJ erred in his credibility findings regarding plaintiff's allegations.  The court will not address this issue in detail because it may be affected by the ALJ's resolution of the case on remand, especially after determining what weight should be accorded to the opinions of Dr. Breckenridge.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

The ALJ did note that plaintiff's activities, especially her ability to do some household chores, and care for a grandchild suggested that plaintiff was much more capable than she alleged (R. at 18).  First, according to the regulations, activities such as taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs are generally not considered to constitute substantial gainful activity.  20 C.F.R. § 404.1572(c) (2013 at 399). Furthermore, although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of testimony regarding pain or limitations, Thompson

v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity.  Krauser v. Astrue, 638 F.3d 1324, 1332-1333 (10th Cir. 2011); Thompson, 987 F.2d at 1490.

In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131 (8th Cir. 2005), the ALJ noted that the claimant engaged in household chores, including laundry, grocery shopping, mowing, cooking, mopping and sweeping.  The ALJ concluded that claimant's allegations of disabling pain were inconsistent with her reports of her normal daily activities and were therefore not deemed credible.  The court found that substantial evidence did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work.**  As we said in McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." In other words, evidence of performing general housework does not preclude a finding of disability.  In Rainey v. Dep't of Health & Human Servs., 48 F.3d 292, 203 (8th Cir.1995), the claimant washed dishes, did light cooking, read, watched TV, visited with his mother, and drove to shop for groceries.  We noted that these were activities that were not substantial

>evidence of the ability to do full-time, competitive work. In Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir.1996), the ALJ pointed to the claimant's daily activities, which included making her bed, preparing food, performing light housekeeping, grocery shopping, and visiting friends.  We found this to be an unpersuasive reason to deny benefits: "**We have repeatedly held...that 'the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work.'**" Id. (quoting Hogg v. Shalala, 45 F.3d 276, 278 (8th Cir.1995)). Moreover, we have reminded the Commissioner
>
>>**that to find a claimant has the residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world...The ability to do light housework with assistance, attend church, or visit with friends on the phone does not qualify as the ability to do substantial gainful activity**.
>
>Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir.1989) (citations omitted).

Draper, 425 F.3d at 1131 (emphasis added).

In Hughes v. Astrue, 705 F.3d 276 (7th Cir. 2013), the court stated:

>[The ALJ] attached great weight to the applicant's ability to do laundry, take public transportation, and shop for groceries. We have remarked the naiveté of the Social Security Administration's administrative law judges in equating

> household chores to employment. "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons (... [her] husband and other family members), and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases [citations omitted]."

705 F.3d at 278.  On remand, the ALJ should consider plaintiff's activities in light of the case law set forth above in order to determine if she is capable of engaging in substantial gainful activity.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 28th day of December 2015, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge